## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF PUERTO RICO

| | |
|---|---|
| ASHLEY WHITE; MICHELE WHITE; WILLIAM WHITE; the CONJUGAL COMMUNITY constituted between Michele White and William White | CIVIL NO. : |
| *Plaintiffs* | **PRODUCT LIABILITY, TORT, NEGLIGENCE** |
| vs. | **TRIAL BY JURY REQUESTED** |
| MÁXIMO SOLAR INDUSTRIES, INC.; MÁXIMO SOLAR GROUP, CORP.; "JOHN DOE 1" to "JOHN DOE 50"; "JOHN DOE 51" to "JOHN DOE 100" | |
| *Defendants* | |

## COMPLAINT

**TO THE HONORABLE COURT**

     **COME NOW** plaintiffs**, Ashley White**, **Michele White**, **William White** and the **Conjugal Community** constituted between **Michele White** and **William White** (hereinafter collectively referred to as ("**Plaintiffs**") , through the undersigned attorney, and very respectfully **STATE**, **ALLEGE** and **PRAY**:

## I.     INTRODUCTION

     1.     This is an action brought pursuant to 28 U.S.C. §1332, seeking damages sustained by **Plaintiffs** on September 20,2017, including, but not limited to, physical injuries, emotional and physiological pain and suffering, loss of consortium and punitive damages, in strict product liability, design defect, manufacturing defect, negligent design, negligent manufacturing, negligence *per se*, breach of warranty and fraud, as a result of the failure, breakdown and collapse of the Sunnova Solar Panel System and Máximo Solar System Unitrack that are objects

of this case (hereinafter collectively referred to as the "**Solar Panel System**"), which **Solar Panel System** was designed, tested, manufactured, inspected, distributed, marketed, promoted and installed by defendants **Máximo Solar Industries, Inc.**, and **Máximo Solar Group, Corp.** (hereinafter referred to collectively as "**Defendants**" and "**Máximo Solar**").

2.      The **Solar Panel System** is the solar panel system manufactured, constructed and installed at the residence of Carlos Mauras Díaz located at H9 Bo. Bajos, Carr. 3 Km. 119, Patillas, Puerto Rico 00723.

## II.      JURISDICTIONAL PLEADINGS

3.      This Honorable Court has jurisdiction over the parties and the subject matter of this litigation pursuant to 28 U.S.C. § 1332, because all the parties on either part of the controversy are of diverse citizenship and the amount in controversy exceeds the sum of **SEVENTY FIVE THOUSAND DOLLARS ($75,000.00),** exclusive of interest and costs.

4.      The facts set forth in this complaint are actionable under Articles 1802, *et. seq.*, of the Civil Code of Puerto Rico, 31 L.P.R.A. § § 5141, *et. seq.*

5.      Venue is proper in this District, pursuant to 28 U.S.C. § 1391, because: this action concerns acts occurring within the Commonwealth of Puerto Rico; **Plaintiffs** are residents of and domiciled in the state of Arkansas; **Máximo Solar Industries, Inc.**, and **Máximo Solar Group, Corp.**, are corporations organized under the laws of the Commonwealth of Puerto Rico, with their principal place of business and "nerve center" located in the Commonwealth of Puerto Rico. **Plaintiffs** are persons that have sustained damages as a result of the failure, breakdown and collapse of the **Solar Panel System** in the Commonwealth of Puerto Rico. **Defendants** are the entities that at all times relevant herein: researched, developed, designed, tested, manufactured, inspected, labeled, distributed, marketed, promoted and otherwise released into

the stream the **Solar Panel System**; purposefully availed themselves of the benefits and protections of the Commonwealth of Puerto Rico; and/or, have had sufficient contacts with the Commonwealth of Puerto Rico that maintenance of the action in this locale would be consistent with traditional notions of fair play and substantial justice. **Defendants** have, and at all times material had, representatives and distributors in this District and also advertised in this District and made material omissions and misrepresentations and breaches of warranties in the same.

6.      Plaintiffs demand trial by jury.

### III.    THE PARTIES

**A.      PLAINTIFFS**

7.      **Ashley White** is of legal age and is the daughter of **Michele White** and **William White**. **Ashley White** is a resident of the state of Arkansas and citizen of the United States of America.

8.      **Michele White** is of legal age and is the mother of **Ashley White**. **Michele White** is a resident of the state of Arkansas and citizen of the United States of America.

9.      **William White** is of legal age and is the father of **Ashley White**. **William White** is a resident of the state of Arkansas and citizen of the United States of America.

10.      **Michele White** and **William White** are married to each other and have constituted between them the **Conjugal Community** that is included as plaintiff in this action.

**B.      DEFENDANTS**

11.      **Máximo Solar Industries, Inc.**, and **Máximo Solar Group, Corp.**, are corporations organized under the laws of the Commonwealth of Puerto Rico, with their principal place of business and "nerve center" located in the Commonwealth of Puerto Rico.

12.     **Máximo Solar** researched, developed, designed, tested, manufactured, inspected, labeled, distributed, marketed, promoted and installed solar panel systems such as the **Solar Panel System**.

13.     **Máximo Solar** researched, developed, designed, tested, manufactured, inspected, labeled, distributed, marketed, promoted and installed the **Solar Panel System**.

14.     Specifically, **Máximo Solar** promoted, marketed, distributed and installed in the Commonwealth of Puerto Rico solar panel systems such as the **Solar Panel System**.

15.     **Máximo Solar** purposefully availed themselves of the benefits and protections of the Commonwealth of Puerto Rico.

16.     **Máximo Solar** has had sufficient contacts with the Commonwealth of Puerto Rico that maintenance of the action in this locale is consistent with traditional notions of fair play and substantial justice.

17.     Additionally, **Máximo Solar** advertised in Puerto Rico and made material omissions and misrepresentations and breaches of warranties in Puerto Rico.

18.     Since 2013, **Máximo Solar** designed, manufactured and installed solar panel systems such as the **Solar Panel System** in the Commonwealth of Puerto Rico.

19.     Since 2013, **Máximo Solar** specifically designed, manufactured and installed solar panel systems for the Commonwealth of Puerto Rico.

20.     **Defendants** also advertised in the Commonwealth of Puerto Rico and made material omissions and misrepresentations and breaches of warranties in the same.

21.     The **Solar Panel System** was constructed and installed at the residence of Carlos Mauras Díaz located at H9 Bo. Bajos, Carr. 3 Km. 119, Patillas, Puerto Rico 00723, by **Máximo Solar**.

22.    **Máximo Solar** designed, engineered, procured, constructed, installed and tested the **Solar Panel System**. As part of the design, engineering, procurement, construction, installation, and testing of the **Solar Panel System**, **Máximo Solar** was responsible for the roof array, module attachments, array tilt, roof underneath array, roof flashing, roof structural, roof j-box/conduit entrance, roof conduit run, roof conduit penetration, home run conduit, ac combiner panel, microinverters, microinverter serial numbers, ac disconnect, installation of the Sunnova monitor, interconnection, among other duties.

23.    Specifically, **Máximo Solar**'s engineer, Mr. Luis G. Barreto (license number 19798), was responsible for the design of the **Solar Panel System**.

24.    **Máximo Solar** was also responsible for the construction and certification of the Solar System Unitrack which is the base, mount or rail of the **Solar Panel System**.

25.    **Máximo Solar** was responsible for the top mounting, end clam or mid clamp, the mount of the solar beam, the embedding to the concrete of the roof, the clipping, bolting, screwing, leveling, angling, clamping imbedding.

26.    The entire **Solar Panel System** installation and the securing of the solar panels was **Máximo Solar**'s responsibility.

27.    Defendants **"JOHN DOE 1"** to **"JOHN DOE 50"** are persons and/or entities that are residents of a state other than Puerto Rico and are liable to **Plaintiffs** for the damages claimed herein because of their actions and/or omissions in relation to the **Solar Panel System**. Upon determination of the true name of defendants **"JOHN DOE 1"** to **"JOHN DOE 50"**, **Plaintiffs** herein will move forthwith to substitute their actual names for their fictitious name.

28.    Defendants **"JOHN DOE 51"** to **"JOHN DOE 100"** are insurance companies that are residents of a state other than Puerto Rico and at all pertinent times, were and still are the

insurers of the remaining defendants, and had issued one or more insurance policies that cover risks and liabilities such as the ones described in this Complaint, and as a result thereof are liable to **Plaintiffs** for the events described herein. **Plaintiffs** will move for substitution of parties once the true names of these insurance companies become known.

## IV.    INTERRUPTION OF THE STATUTE OF LIMITATIONS

29.    On April 9, 2018, **Plaintiffs**, through their attorney, sent a letter to **Máximo Solar** with the purpose of presenting a formal claim against **Máximo Solar** and interrupting the running of the statute of limitations.

30.    The letter was sent by Certified Mail and was also hand delivered.

31.    The Hand delivered letter was received on April 9, 2018.

32.    The letter sent by Certified Mail was received on April 12, 2018.

33.    As result thereof, the present action is not time barred.

## V.    FACTUAL BACKGROUND

34.    At all times material to this action, Sunnova Energy Corporation ("Sunnova") was the owner of the **Solar Panel System**.

35.    At all times material to this action, **Máximo Solar** installed the **Solar Panel System** on the roof of the residence of Carlos Mauras Díaz located at H9 Bo. Bajos, Carr. 3 Km. 119, Patillas, Puerto Rico 00723.

36.    At all times material to this action, **Máximo Solar** was responsible for the research, development, design, testing, manufacturing, inspection, labeling, and installation of the **Solar Panel System**.

37.     At all times material to this action, **Máximo Solar** was responsible for inspecting the **Solar Panel System** for its proper research, development, design, testing, manufacturing, inspection, labeling, and installation of the **Solar Panel System**.

38.     At all times material to this action, **Máximo Solar** was responsible for taking the necessary measures in relation to the construction, installation and operation of the **Solar Panel System** as required by the circumstances.

39.     At all times material to this action, Sunnova was responsible for providing maintenance to the **Solar Panel System**.

40.     Sunnova reviewed the design used by **Máximo Solar** to install solar systems such as the **Solar Panel System** to ensure that it met Sunnova's quality standards.

41.     At all times material to this action, Sunnova reviewed the design of the **Solar Panel System** to ensure that it met Sunnova's quality standards.

42.     Sunnova reviewed the design of Máximo Solar System Unitrack to ensure that it met Sunnova's quality standards.

43.     Sunnova approved the design of Máximo Solar System Unitrack to ensure that it met Sunnova's quality standards.

44.     **Máximo Solar** submitted to Sunnova the design used by **Máximo Solar** to install solar systems such as the **Solar Panel System** for Sunnova's review and approval.

45.     At all times material to this action, **Máximo Solar** submitted to Sunnova the design used by **Máximo Solar** to install the **Solar Panel System** for Sunnova's review and approval.

46.     Sunnova's in-house engineers reviewed and approved the design used by **Máximo Solar** to install solar systems such as the **Solar Panel System**.

47.     At all times material to this action, Sunnova's in-house engineers reviewed and approved the design used by **Máximo Solar** to install the **Solar Panel System**.

48.     Sunnova oversaw the construction by **Máximo Solar** of solar systems such as the **Solar Panel System**.

49.     At all times material to this action, Sunnova oversaw the construction by **Máximo Solar** of the **Solar Panel System**.

50.     Sunnova approved the construction by **Máximo Solar** of solar systems such as the **Solar Panel System**.

51.     At all times material to this action, Sunnova approved the construction by **Máximo Solar** of the **Solar Panel System**.

52.     Sunnova collaborated with **Máximo Solar** to ensure that solar systems such as the **Solar Panel System** were properly constructed and installed.

53.     At all times material to this action, Sunnova collaborated with **Máximo Solar** to ensure that the **Solar Panel System** were properly constructed and installed.

54.     Once the solar systems such as the **Solar Panel System** were completed and installed, Sunnova reviewed the pertinent certifications submitted by **Máximo Solar** to verify that the construction and installation work was complete and complaint.

55.     Once the **Solar Panel System** was completed and installed, Sunnova reviewed the pertinent certifications submitted by **Máximo Solar** to verify that the construction and installation work was complete and complaint.

56.     Once the solar systems such as the **Solar Panel System** were completed and installed, Sunnova reviewed the pertinent certifications submitted by **Máximo Solar** to approve that the construction and installation work was complete and complaint.

8

57.    Once the **Solar Panel System** was completed and installed, Sunnova reviewed the pertinent certifications submitted by **Máximo Solar** to approve that the construction and installation work was complete and complaint.

58.    Once the **Solar Panel System** was completed and installed, Sunnova reviewed the pertinent certifications submitted by **Máximo Solar** and approved that the construction and installation work was complete and complaint.

59.    At all times material to this action, **Máximo Solar** knew or should have known that hurricane María was threatening to hit Puerto Rico.

60.    At all times material to this action, **Máximo Solar** knew or should have known that hurricanes dislodged panels from solar systems such as the **Solar Panel System**.

61.    At all times material to this action, **Máximo Solar** knew that dislodged panels of solar systems such as the **Solar Panel System** posed serious and permanent health risks to persons and animals exposed to them.

62.    During the early hours of September 20, 2017, **Ashley White** was in her home when one of the panels of the **Solar Panel System** broke loose, flew and went through one of the home windows slicing open her neck, cutting various arteries including the exterior jugular as well as severing muscles.

63.    This injuries caused **Ashley White** to bleed profusely to the point of impending death.

64.    The panel that entered the window of the house shattered causing **Ashley White** to be exposed to the hazardous chemicals of the panel ("**Hazardous Chemicals**").

65.    **Máximo Solar** knew, or should have known, that the solar panels of the **Solar Panel System** had **Hazardous Chemicals**.

66. The **Hazardous Chemicals** spread throughout that home and living environment of the family and their animals.

67. Upon becoming aware of **Ashley White**'s injuries and condition, **Michele White** and **William White**, who are both combat veterans, began working together frantically to try to stem the bleeding by applying pressure and grabbing towels to use as field dressing, but **Ashley White** kept bleeding through every item.

68. After life sustaining measures taken by **Michele White** and **William White**, a neighbor, a local police officer and a municipal worker helped **Michele White** and **William White** in taking **Ashley White** to the Patillas' CDT where the medical personnel were unable to help **Ashley White** because of the severity of her wounds.

69. The mayor of Patillas, with his crews, cleared the road to Guayama in order for an ambulance to take **Ashley White** to the Guayama Mennonite Hospital where she underwent surgery.

70. As a direct result of the incident narrated above ("**Subject Incident**"), **Ashley White** was seriously injured and suffered multiple serious physical and mental traumas as described herein below.

71. As a direct result of the **Subject Incident**, **Michele White** and **William White** have suffered severe mental trauma as described herein below.

72. The **Subject Incident** and the consequent damages sustained by **Plaintiffs** were caused by the negligence and fault of **Máximo Solar** as more fully set forth herein below.

73. On September 20, 2017, Carlos Mauras Díaz was using the **Solar Panel System** for its intended use as designed, manufactured and installed by **Máximo Solar**.

74.     **Máximo Solar** expected or should have reasonably expected that the design, manufacture and installation of the **Solar Panel System** would have consequences in the Commonwealth of Puerto Rico such as the ones sustained by **Plaintiffs**.

75.     **Máximo Solar** knew or should have reasonably known that the **Solar Panel System** was defectively designed, manufactured and installed and that such defects would have consequences in the Commonwealth of Puerto Rico such as the ones sustained by **Plaintiffs**.

76.     **Máximo Solar** knew or should have reasonably known that the **Solar Panel System** was hazardous.

77.     After obtaining knowledge of the **Subject Incident**, **Máximo Solar** made no efforts to recover, decontaminate or warn of the existence and effects of the **Hazardous Chemicals**.

78.     The exposure to the **Hazardous Chemicals** cause harm and damages known and unknown requiring medical monitoring of the **Plaintiffs**.

79.     The exposure to the **Hazardous Chemicals** was directly caused by **Máximo Solar'**s negligence.

80.     The specific allegations of negligence and/or fault against **Máximo Solar** are the following:

      a.     The totality of the **Solar Panel System** was defectively designed.

      b.     The components of the **Solar Panel System** were defectively designed.

      c.     The totality of the **Solar Panel System** was defectively manufactured.

      d.     The components of the **Solar Panel System** were defectively manufactured.

      e.     The totality of the **Solar Panel System** was defectively installed.

f.      The components of the **Solar Panel System** were defectively installed.

g.      The totality of the **Solar Panel System** was defectively assembled.

h.      The components of the **Solar Panel System** were defectively assembled.

i.      The totality of the **Solar Panel System** and its independent components were unreasonably dangerous and could cause an incident such as the **Subject Incident**.

j.      The installation and assembly of the totality of the **Solar Panel System** and its independent components were unreasonably dangerous and could cause an incident such as the **Subject Incident**.

k.      **Máximo Solar**, as designer, manufacturer and entity responsible for the inspection and installation of the **Solar Panel System**, knew or should have reasonably known that the **Solar Panel System** could not withstand the circumstances prevailing on September 20, 2017, and as such failed to take any and all actions that would have prevented the occurrence of the **Subject Incident**, including, but not limited to, properly and adequately securing the **Solar Panel System** to sustain hurricane winds of the intensity announced and forecasted for September 20, 2017.

l.      **Máximo Solar**, as designer, manufacturer and entity responsible for the inspection and installation of the **Solar Panel System**, knew or should have reasonably known that the **Solar Panel System** could not withstand the circumstances prevailing on September 20, 2017, and as such failed to inform Carlos Mauras Díaz that the **Solar Panel System** could not withstand the circumstances prevailing on September 20, 2017, and failed to require him to take any and all actions that would have prevented the occurrence of the **Subject Incident**.

m.      The **Solar Panel System** was defectively designed, manufactured and installed because, for reasons including but not limited to: drill holes not adequately provided in

the aluminum structural shapes; new drill holes made side by side to the existing ones; enlarged existing drill holes; improper system clips were provided and/or used; the vertical support was deficient; insufficient vertical supports; the attachment of the solar panels to the aluminum framing was deficient; the thickness of the aluminum shapes was inappropriate; it failed to have safety clips; it lacked framing bracing; and, it was otherwise defectively designed and/or manufactured and/or installed.

n.     **Máximo Solar** made no efforts to recover, decontaminate or warn **Plaintiffs** of the existence and effects of the **Hazardous Chemicals**.

o.     **Máximo Solar** knowingly exposed **Plaintiffs** to the **Hazardous Chemicals.**

p.     The **Solar Panel System** was defectively designed, manufactured and installed because it failed, broke down and collapsed.

q.     The **Solar Panel System** was defectively designed, manufactured and installed because the solar panels detached and flew away.

r.     The **Solar Panel System** was defectively designed, manufactured and installed in that it failed to prevent the solar panels from detaching.

s.     The **Solar Panel System** was defectively designed, manufactured and installed in that it failed to provide adequate means and methods to determine whether or not the solar panel would detach.

t.     The **Solar Panel System** was defective due to the failure to provide any written instructions, warnings, training or means or methods of proper installation.

u.     The **Solar Panel System** was defective in that it was hazardous.

v.     The **Solar Panel System** was defective in that it failed to provide sufficient warnings and instructions.

w.     **Defendants** failed to take any other action that would have prevented the occurrence of the **Subject Incident**.

x.     **Defendants** were negligent or at fault in other regards.

## VI.    FIRST CAUSE OF ACTION – STRICT LIABILITY

81.    The preceding paragraphs are incorporated as if fully set forth herein.

82.    **Máximo Solar** carelessly, negligently, recklessly, wantonly and willfully researched, developed, designed, tested, manufactured, inspected, labeled, distributed, marketed, promoted and installed the **Solar Panel System** and its components.

83.    It was the duty of the **Máximo Solar** to research, develop, design, test, manufacture, inspect and install the **Solar Panel System** in such a condition that would make it reasonably safe for third persons.

84.    At all material times, **Máximo Solar** had actual and/or constructive knowledge of the nature and condition of the **Solar Panel System** and its components.

85.    **Máximo Solar** owed to **Plaintiffs** a duty of strict liability not to harm them as a result of the inspection, installation and construction of the **Solar Panel System** and its components.

86.    **Máximo Solar**'s breached of its duty was the proximate cause and the substantial factor in causing the damages sustained by **Plaintiffs**.

87.    As a result, **Plaintiffs** are entitled to be compensated by **Máximo Solar** for the concepts and sums stated below.

## VII.    SECOND CAUSE OF ACTION – DANGEROUS CONDITION

88.    The preceding paragraphs are incorporated as if fully set forth herein.

14

89.     **Máximo Solar** researched, developed, designed, tested, manufactured, inspected, constructed and installed and the **Solar Panel System** and its components.

90.     The **Solar Panel System** and its components were not reasonably safe and were unduly and unreasonably dangerous for its intended use when they were researched, developed, designed, tested, manufactured, inspected, labeled, distributed, marketed, promoted, constructed and installed by **Máximo Solar**.

91.     At all material times, **Máximo Solar** had actual and/or constructive knowledge of the nature and condition of the **Solar Panel System** and its components.

92.     At the time of the **Subject Incident**, the **Solar Panel System** and its components were being used for the purpose for which they were designed and intended.

93.     At the time of the **Subject Incident**, **Plaintiffs** could not have discovered, by the exercise of reasonable care, the dangerous condition of the **Solar Panel System** and its components or perceived their danger and could not have avoided their injuries.

94.     The acts and omissions of **Máximo Solar** and the unreasonably dangerous condition of the **Solar Panel System** and its components caused the injuries sustained by **Plaintiffs**.

95.     As a result, **Plaintiffs** are entitled to be compensated by **Máximo Solar** for the concepts and sums stated below.

## VIII.     THIRD CAUSE OF ACTION – DEFECTIVE CONDITION

96.     The preceding paragraphs are incorporated as if fully set forth herein.

97.     **Máximo Solar** researched, developed, designed, tested, manufactured, inspected, labeled, distributed, marketed, promoted, constructed and installed the **Solar Panel System** and its components.

98.     The **Solar Panel System** and its components were defective when they were researched, developed, designed, tested, manufactured, inspected, labeled, distributed, marketed, promoted, constructed and installed by **Máximo Solar**.

99.     At all material times, **Máximo Solar** had actual and/or constructive knowledge of the nature and condition of the **Solar Panel System** and its components.

100.    At the time of the **Subject Incident**, the **Solar Panel System** and its components were being used for the purpose for which they were designed and intended.

101.    At the time of the **Subject Incident**, **Plaintiffs** could not have discovered, by the exercise of reasonable care, the defective condition of the **Solar Panel System** and its components or perceived their danger and could not have avoided their injuries.

102.    The acts and omissions of **Máximo Solar** and the defective condition of the **Solar Panel System** and its components caused the injuries sustained by **Plaintiffs**.

103.    As a result, **Plaintiffs** are entitled to be compensated by **Máximo Solar** for the concepts and sums stated below.

## IX.     FOURTH CAUSE OF ACTION – TORT CLAIM

104.    The preceding paragraphs are incorporated as if fully set forth herein.

105.    **Máximo Solar**, as designer, manufacturer and entity responsible for the inspection, installation and construction of the **Solar Panel System**, knew or should have reasonably known that the **Solar Panel System** could not withstand the circumstances prevailing on September 20, 2017, and as such negligently failed to take any and all actions

that would have prevented the occurrence of the **Subject Incident**, including, but not limited to, properly and adequately securing the **Solar Panel System** to sustain hurricane winds of the intensity announced and forecasted for September 20, 2017.

106. **Máximo Solar**, as designer, manufacturer and entity responsible for the inspection, installation and construction of the **Solar Panel System**, knew or should have reasonably known that the **Solar Panel System** could not withstand the circumstances prevailing on September 20, 2017, and as such negligently failed to inform Carlos Mauras Díaz that the **Solar Panel System** could not withstand the circumstances prevailing on September 20, 2017, and failed to require him to take any and all actions that would have prevented the occurrence of the **Subject Incident**.

107. **Máximo Solar**, as designer, manufacturer and entity responsible for the inspection, installation and construction of the **Solar Panel System**, was negligent, among other things, in that: drill holes were not adequately provided in the aluminum structural shapes; new drill holes were made side by side to the existing ones; the existing drill holes were enlarged; improper system clips were provided and/or used; the vertical short support was deficient; not sufficient vertical short supports were provided; the attachment of the solar panels to the aluminum framing was deficient; the thickness of the aluminum shapes was inappropriate; fail to have safety clips; and, lacked framing bracing.

108. After obtaining knowledge of the **Subject Incident**, **Máximo Solar** made no efforts to recover, decontaminate or warn of the existence and effects of the **Hazardous Chemicals**.

109. The exposure to the **Hazardous Chemicals** cause harm and damages known and unknown requiring medical monitoring of the **Plaintiffs**.

17

110.   The exposure to the **Hazardous Chemicals** was directly caused by **Máximo Solar**"s negligence.

111.   **Máximo Solar** was negligent in other regards, which negligence caused the **Subject Incident**.

112.   As a direct and proximate cause of **Máximo Solar**'s negligent acts and omissions, **Plaintiffs** sustained the damages described above.

113.   As a result, **Plaintiffs** are entitled to be compensated by **Máximo Solar** for the concepts and sums stated below.

## X.   FIFTH CAUSE OF ACTION – FAILURE TO WARN

114.   The preceding paragraphs are incorporated as if fully set forth herein.

115.   **Máximo Solar** researched, developed, designed, tested, manufactured, inspected, labeled, distributed, marketed, promoted, constructed and installed the **Solar Panel System** and its components.

116.   The **Solar Panel System** failed to contain adequate instructions warnings when it was placed in the stream of commerce.

117.   **Máximo Solar** had a duty to warn against latent dangers in the **Solar Panel System** resulting from foreseeable weather conditions of which they knew or should have known.

118.   **Máximo Solar** failed to warn against said latent dangers in the **Solar Panel System**.

119.   **Máximo Solar**'s failure to warn against such latent dangers was the proximate cause and a substantial factor in causing **Plaintiffs**' damages.

120. As a result, **Plaintiffs** are entitled to be compensated by **Máximo Solar** for the concepts and sums stated below.

## XI. SIXTH CAUSE OF ACTION – WARRANTY

121. The preceding paragraphs are incorporated as if fully set forth herein.

122. At the time and place of researching, developing, designing, testing, manufacturing, inspecting, labeling, distributing, marketing, promoting, owning, installing and maintaining the **Solar Panel System**, **Máximo Solar** expressly and/or impliedly warranted that the **Solar Panel System** was reasonably safe and fit for its intended uses.

123. The **Solar Panel System** was not fit for the purposes for which it was to be used.

124. **Máximo Solar** breached the implied and/or express warranties, and said breach was the proximate cause and a substantial factor in causing **Plaintiffs**' damages.

125. As a result, **Plaintiffs** are entitled to be compensated by **Máximo Solar** for the concepts and sums stated below.

## XII. PLAINTIFF'S DAMAGES

### A. Ashley White's Damages

126. As a direct result of the **Subject Incident** and the negligence and fault of **Máximo Solar**, **Ashley White** sustained an open wound to her neck that cut various arteries including the exterior jugular and exposed several muscles as a result of which she bled profusely to the point of imminent death.

127. Upon becoming aware of **Ashley White**'s injuries and condition, her parents began working together frantically to try to stem the bleeding by applying pressure and grabbing towels to use as field dressing, but **Ashley White** kept bleeding through every item.

128.   After life sustaining measures taken by her parents, **Ashley White** was taken to the Patillas' CDT were the medical personnel were unable to help her because of the severity of her wounds.

129.   The mayor of Patillas, with his crews, cleared the road to Guayama in order for an ambulance to take **Ashley White** to the Guayama Menonita Hospital where she was surgically intervene.

130.   **Ashley White** was diagnosed, among other things, with brachial plexus injury as well as a traumatic brain injury, post concussive syndrome, memory loss, inability to focus and permanent cognitive issues.

131.   **Ashley White** has received physical therapy but has the left side of her body is inoperative.

132.   **Ashley White** remains with a scar on her neck.

133.   At the present time, **Ashley White** is receiving medical treatment for her conditions.

134.   As a direct result of the **Subject Incident** and the negligence and fault of **Máximo Solar**, **Ashley White** has sustained and will continue to sustain in the future severe and great physical injuries and pain, which have permanently and partially disabled her.

135.   As a direct result of the **Subject Incident** and the negligence and fault of **Máximo Solar**, **Ashley White** has sustained and will continue to sustain in the future severe mental, moral, psychological, spiritual and emotional distress, pain and suffering, which has permanently and partially disabled her.

136.   As a direct result of the **Subject Incident** and the negligence and fault of **Máximo Solar**, **Ashley White** has incurred and will incur in the future medical expenses, medical monitoring and expenses of other nature.

137.   As a direct result of the **Subject Incident** and the negligence and fault of **Máximo Solar**, **Ashley White**'s ability to generate income has been greatly diminished as a result of which she has sustained and will sustain a loss of income.

138.   The damages sustained by **Ashley White**, as well as the **Subject Incident**, were solely caused by the negligence and fault of **Defendants**.

139.   **Defendants** are liable for the physical damages sustained by **Ashley White** which are estimated in a sum no less than **FIVE MILLION DOLLARS ($5,000,000.00)**.

140.   **Defendants** are liable for the mental, moral, psychological, spiritual and emotional distress, pain and suffering sustained by **Ashley White** which are estimated in a sum no less than **FIVE MILLION DOLLARS ($5,000,000.00)**.

141.   **Defendants** are liable for the medical expenses and expenses of other nature that **Ashley White** has incurred and will incur in the future which are estimated in a sum no less than **TEN MILLION DOLLARS ($10,000,000.00)**.

142.   **Defendants** are liable for **Ashley White**'s past, present and future the loss of income which is estimated in a sum no less than **FIVE MILLION DOLLARS ($5,000,000.00)**.

**B.**   **Michele White's Damages**

143.   As a direct result of the **Subject Incident**, the negligence and fault of **Máximo Solar** and the consequent damages of **Ashley White**, **Michele White** sustained the fear of the death of her daughter **Ashley White** and has had to make drastic changes in her live to assist **Ashley White** in her medical treatment and her new way of life.

144.    As a direct result of the **Subject Incident** and the negligence and fault of **Máximo Solar**, **Michele White** has sustained and will continue to sustain severe mental, moral, psychological, spiritual and emotional distress, pain and suffering.

21

145.   As a direct result of the **Subject Incident** and the negligence and fault of **Máximo Solar**, **Michele White** has incurred and will incur in the future medical expenses, medical monitoring and expenses of other nature.

146.   The damages sustained by **Michele White**, as well as the **Subject Incident**, were solely caused by the negligence and fault of **Defendants**.

147.   **Defendants** are liable for the mental, moral, psychological, spiritual and emotional distress, pain and suffering sustained by **Michele White** which are estimated in a sum no less than **ONE MILLION DOLLARS ($1,000,000.00)**.

C.   **William White's Damages**

148.   As a direct result of the **Subject Incident**, the negligence and fault of **Máximo Solar** and the consequent damages of **Ashley White**, **William White** sustained the fear of the death of his daughter **Ashley White** and has had to make drastic changes in his live to assist **Ashley White** in her medical treatment and her new way of live.

149.    As a direct result of the **Subject Incident** and the negligence and fault of **Máximo Solar**, **William White** has sustained and will continue to sustain severe mental, moral, psychological, spiritual and emotional distress, pain and suffering.

150.   As a direct result of the **Subject Incident** and the negligence and fault of **Máximo Solar**, **William White** has incurred and will incur in the future medical expenses, medical monitoring and expenses of other nature.

151.   The damages sustained by **William White**, as well as the **Subject Incident**, were solely caused by the negligence and fault of **Defendants**.

152.    **Defendants** are liable for the mental, moral, psychological, spiritual and emotional distress, pain and suffering sustained by **William White** which are estimated in a sum no less than **ONE MILLION DOLLARS ($1,000,000.00)**.

D.     **Conjugal Community Damages**

153.    As a direct result of the **Subject Incident** and the negligence and fault of **Máximo Solar**, the **Conjugal Community** has incurred and will incur in medical expenses, medical monitoring and expenses of other nature related to the damages sustained by **Ashley White**, **Michele White** and **William White**.

154.    As a direct result of the **Subject Incident** and the negligence and fault of **Máximo Solar**, the ability of **Michele White** and **William White** to generate income has been greatly diminished as a result of which the **Conjugal Community** has sustained and will sustain a loss of income.

155.    As a direct result of the **Subject Incident** and the negligence and fault of **Máximo Solar**, **Plaintiffs** had to sell their home in Patillas ans had to move to Arkansas in order to obtain adequate medical services and treatment for **Ashley White**.

156.    As a result thereof, the **Conjugal Community** sustained a loss in the sale of the property in Patillas, incurred in travel expenses, incurred and will incur in rental expenses and will incurred in the expense of purchasing a new house in Arkansas.

157.    The damages sustained by the **Conjugal Community**, as well as the **Subject Incident**, were solely caused by the negligence and fault of **Defendants**.

158.    **Defendants** are liable for the medical expenses and expenses of other nature that the **Conjugal Community** has incurred and will incur in the future which are estimated in a sum no less than **ONE MILLION DOLLARS ($1,000,000.00)**.

159.   **Defendant** are liable for the **Conjugal Community**'s past, present and future the loss of income which is estimated in a sum no less than **FIVE HUNDRED THOUSAND DOLLARS ($500,000.00)**.

## XIII.   TEMERITY

160.   The preceding paragraphs are incorporated as if fully set forth herein.

161.   In the event that **Máximo Solar** denies responsibility for the damages claimed herein, due to **Máximo Solar**'s obstinate and temerarious denial, **Plaintiffs** are also entitled to be awarded pre-judgment and post-judgment interests to be computed from date this action was filed, plus a reasonable amount for attorney's fees.

## XIV.   PETITION FOR RELIEF

**WHEREFORE,** it is respectfully requested from this Honorable Court that it grant the present Complaint and it enter judgment against the **Defendants** for the sums claimed herein.

**RESPECTFULLY SUBMITTED.**

In San Juan, Puerto Rico, on this 29th day of November 2018**.**

**CARAZO QUETGLAS LAW OFFICES**
**PMB 133**
**Ave. Esmeralda #53, Ste. 2**
**GUAYNABO, PR 00969-4461**
**TEL (787) 707-0588/ FAX (787) 707-0595**
**E mail: jorge@jctuayudalegal.com**

**s/ JORGE CARAZO-QUETGLAS**
**Jorge Carazo-Quetglas**
**USDC-PR:      201305**

**ALBERT L PARISI, ESQ.**
**Of Counsel**
**16 West Main St.**
**Suite 104**
**Rochester, NY 144614**

Tel. (585) 576-0440
E mail: albertlparisi@aol.com

**S/ ALBERT L. PARISI**
Albert L. Parisi
USDC-WDNY
289770710